IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────

MARIA S.,

                    Plaintiff,

          v.                                  Civil Action No.
                                              3:21-CV-0177 (DEP)


KILOLO KIJAKAZI, Acting Commissioner
of Social Security,[1]

                    Defendant.

─────────────────────────────────────

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF

LACHMAN, GORTON LAW FIRM      PETER A. GORTON, ESQ.
P.O. Box 89
1500 East Main Street
Endicott, NY 13761-0089

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        JESSICA RICHARDS, ESQ.
625 JFK Building
15 New Sudbury St
Boston, MA 02203

─────────────────────

[1]      Plaintiff's complaint named Andrew M. Saul, in his official capacity as the
Commissioner of Social Security, as the defendant. On July 12, 2021, Kilolo Kijakazi
took office as the Acting Social Security Commissioner. She has therefore been
substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the
Federal Rules of Civil Procedure, and no further action is required in order to effectuate
this change. *See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## DECISION AND ORDER[2]

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled at the relevant times and, accordingly, is ineligible for the disability insurance ("DIB") and supplemental security income ("SSI") benefits for which she has applied.  For the reasons set forth below, I conclude that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence.

## I.    BACKGROUND

Plaintiff was born in December of 1969, and is currently fifty-two years of age.  She was forty-eight years old on January 9, 2018, the date on which she filed her applications, and forty-nine years old January 1, 2019, the amended date on which she claims she became disabled. Plaintiff stands between five feet and four inches and five feet and five inches in height, and weighed between approximately one hundred and

---

2    This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

thirty and one hundred and forty-five pounds during the relevant time period.  Plaintiff lives in a house with her long-term boyfriend in Binghamton, New York.

In terms of education, plaintiff left school in the ninth or tenth grade in order to secure a job to help her family, and has not obtained a GED.  She has worked in the past primarily as a waitress, and last worked part-time for a few months at the beginning of 2020, which was within the period relevant to her applications for disability.

Physically, plaintiff alleges that she suffers principally from pain in her lower back that radiates into her legs; bilateral pain, numbness and tremors in her hands related to carpal tunnel syndrome and osteoarthritis; pain in her neck and arms; and migraines.  She received treatment for these impairments in the form of injections, medication, physical therapy, and bilateral carpal tunnel surgery during the relevant period primarily from nurse practitioner ("NP") Victoria Engler and other sources at United Health Services, Lourdes Emergency Department, Binghamton General Hospital, Dr. Anil Kapoor, and Dr. Taseer Minhas.  Plaintiff additionally alleges that she suffers from mental impairments including depression, anxiety, and bipolar disorder, for which she received limited treatment during the relevant period.

Plaintiff alleges that she is able to walk one hour at a time with pain, can stand for only fifteen minutes at one time because it is more painful to stand in one place than to walk, and cannot lift even a gallon of milk. She claims to have difficulty driving due to pain in her neck and left arm, so her boyfriend drives her places. Due to her carpal tunnel syndrome, plaintiff also notes issues in using her right hand due to a tremor, which makes it difficult for her to hold things like a utensil or pen, although medication helps. Plaintiff reports that her boyfriend does the household chores and shopping for them, while she spends the majority of the day lying down and watching television. She further reports that, in addition to her physical impairments, she also suffers from bipolar disorder, which causes her to not leave the house or do much. She states that her bipolar symptoms worsened in 2016 when her sister died, and that she still has periods of crying, as well as difficulty focusing and concentrating.

At the second, supplemental hearing related to her applications for benefits, plaintiff reported that from January of 2020 until two weeks prior when the COVID pandemic caused her job to close, she was at that time working three days per week, for five or six hours each day, as a waitress at a diner. She testified that she was not required to carry trays at that job and was able to use her back brace, but still experienced pain from

working.  She also reported experiencing daily migraine headaches that had more recently developed, and which, she claimed, rendered her unable to function unless she took medication.

## II.   PROCEDURAL HISTORY

### A.   Proceedings Before the Agency

Plaintiff applied for DIB and SSI payments under Titles II and XVI of the Social Security Act, respectively, on January 9, 2018.  In support of her applications, she claimed to be disabled due to carpal tunnel syndrome and osteoarthritis in both hands, a back injury with sciatica in both legs, herniated discs in her neck, arm problems, depression, and bipolar disorder.

A hearing was conducted on November 15, 2019, by ALJ Robyn L. Hoffman to address plaintiff's application for benefits.  ALJ Hoffman conducted a supplemental hearing on April 1, 2020 to obtain updated testimony from the plaintiff and testimony from a vocational expert.  ALJ Hoffman issued an unfavorable decision on May 21, 2020.  That opinion became a final determination of the agency on December 29, 2020, when the Social Security Appeals Council ("Appeals Council") denied plaintiff's request for review of the ALJ's decision.

### B.   The ALJ's Decision

In her decision, ALJ Hoffman applied the familiar, five-step sequential test for determining disability.  At step one, she found that, while plaintiff received earnings after her alleged onset date, her work activity did not rise to the level of substantial gainful activity during the relevant period. Proceeding to step two, ALJ Hoffman found that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including degenerative disc disease of the cervical and lumbar spine, osteoarthritis of her bilateral hands, carpal tunnel syndrome of her bilateral hands post release surgery, bipolar disorder, affective disorder, and a major depressive disorder as variously characterized.  The ALJ further found, however, that plaintiff's impairments of migraines and recent possible stroke are not severe.

At step three, ALJ Hoffman examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.02, 1.04, 11.14, 12.04, and 12.06.

ALJ Hoffman next surveyed the available record evidence and concluded that, notwithstanding her impairments, plaintiff retains the

residual functional capacity ("RFC") to perform a range of light work with

the following restrictions:

> the claimant is able to occasionally lift and carry twenty pounds; frequently lift and carry ten pounds; sit for up to six hours; and stand or walk for six hours, all in an eight hour workday with normal breaks. The claimant should not perform more than occasional fine manipulation such as repetitive hand-finger actions, fingering or feeling with her dominant right hand, but she retains the ability to grasp, hold, turn, raise and lower objects with either hand. She can occasionally climb ramps or stairs; and occasionally climb ladders, ropes, or scaffolds. She can perform occasional balancing on uneven terrain, but is not limited in the ability to maintain balance on even terrain. She can perform occasional stooping, kneeling, crouching, and crawling. The claimant retains the ability to: understand and follow simple instructions and directions; perform simple tasks independently; maintain attention/concentration for simple tasks; regularly attend to a routine and maintain a schedule; relate to and interact appropriately with all others to the extent necessary to carry out simple tasks; can handle simple, repetitive work-related stress in that the claimant can make occasional decisions directly related to the performance of simple tasks in a position with consistent job duties that does not require the claimant to supervise or manage the work of others.

ALJ Hoffman found at step four that, with the above RFC, plaintiff is

unable to perform her past relevant work as a waitress.  Proceeding to step

five, the ALJ elicited the testimony of a vocational expert regarding how

plaintiff's limitations would impact her ability to perform other work and

concluded, in light of the vocational expert's testimony, that plaintiff remains able to perform available work in the national economy, citing as representative positions housekeeping cleaner, router, and a lunchroom or coffee shop counter attendant.  Based upon these findings, ALJ Hoffman concluded that plaintiff was not disabled during the relevant period.

C.   This Action

Plaintiff commenced this action on February 19, 2021.[3]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence in that the ALJ (1) did not adequately explain her findings regarding plaintiff's use of her hands and did not properly assess the opinion evidence related to that ability, (2) failed to include greater limitations related to plaintiff's ability to stand, walk, and change positions based on her improper rejection of multiple opinions and improper consideration of the evidence, and (3) failed to include any limitations in the RFC related to off-task and attendance limitations and improperly failed to credit the opinions from Dr. Kapoor and NP Engler, both of which indicated such limitations.  Dkt. No. 13.

---

[3]     This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

Oral argument was conducted in this matter, by telephone, on September 28, 2022, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir.

1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months[.]"  42 U.S.C. §

423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of
> such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

As was discussed above, plaintiff argues that the ALJ failed to

account for a number of limitations that were warranted by the record, in part due to her failure to properly assess the medical opinion evidence of record. Because plaintiff's application was filed after March 27, 2017, this case is subject to the amended regulations regarding opinion evidence. Under those regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s), . . . including those from your medical sources," but rather will consider whether those opinions are persuasive by primarily considering whether the opinions are supported by and consistent with the record in the case. 20 C.F.R. § 404.1520c(a); see 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5853 (stating that, in enacting the new regulations, the agency was explicitly "not retaining the treating source rule"). An ALJ must articulate in his or her determination as to how persuasive he or she finds all of the medical opinions and explain how he or she considered the supportability[4] and consistency[5] of those opinions. 20 C.F.R. §

---

[4]     On the matter of supportability, the regulations state that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinion or prior administrative medical findings(s) will be." 20 C.F.R. § 416.920c(c)(1).

[5]     On the matter of consistency, the regulations state that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the

404.1520c(b).  The ALJ also may – but is not required to – explain how he or she considered the other relevant enumerated factors related to the source's relationship with the claimant, including the length of any treatment relationship, the frequency of examinations by the source and the purpose and extent of the treatment relationship, whether the source had an examining relationship with the claimant, whether the source specializes in an area of care, and any other factors that are relevant to the persuasiveness of that source's opinion.  20 C.F.R. § 404.1520c(c).

1.    <u>Plaintiff's RFC Related to Use of Her Hands and Arms</u>

Plaintiff first argues that the ALJ improperly assessed her ability to use her hands and arms by failing to find that she had limitations in her bilateral upper extremities and by improperly rejecting contrary medical opinions addressing this issue while instead relying on her own lay assessment of the evidence.  Dkt. No. 13, at 10-20.  In her RFC determination, ALJ Hoffman found that plaintiff cannot perform more than occasional fine manipulation such as repetitive hand-finger actions, fingering or feeling with her dominant right hand, but did not include any limitations in use of her left hand, and further concluded that plaintiff retains

---

medical opinion(s) or prior administrative medical finding(s) will be."  20 C.F.R. § 416.920c(c)(2).

the ability to grasp, hold, turn, raise and lower objects with either hand. Administrative Transcript ("AT") at 15.[6]  In support of this conclusion, the ALJ noted that plaintiff had documented carpal tunnel syndrome in both hands, but that she had release surgery on both at different times. According to the plaintiff, the surgery helped resolve issues in her left hand but not her right hand, which continues to shake.  AT 16.  The ALJ discussed the medical evidence related to plaintiff's hand symptoms in detail, including plaintiff's surgeries and their efficacy, and the objective observations from her treatment visits.  AT 17.  In assessing the relevant opinion evidence, the ALJ found the opinion from state agency medical consultant Dr. A. Periakaruppan to be persuasive, the opinion from consultative examiner Dr. Gilbert Jenouri to be less persuasive related to the ability to walk and stand specifically, and the opinion from treating physician Dr. Anil Kapoor to be unpersuasive because it is not supported by treatment notes and is from before the alleged onset date.  AT 18-19.

Plaintiff argues that the ALJ erred in rejecting Dr. Kapoor's opinion as a general matter, because she failed to address the supportability and consistency factors, and instead merely stated in a conclusory manner that

---

[6]     The administrative transcript is found at Dkt. No. 12, and will be referred to throughout this decision as "AT __."

the opinion is inconsistent with the notes of plaintiff's treatment.  Dkt. No. 13, at 15-16.  While plaintiff is correct that such a cursory statement would not be sufficient on its own and would preclude meaningful judicial review, her argument ignores the fact that the ALJ engaged in a fairly detailed discussion of the evidence earlier in her decision, which must be read as a whole.  AT 16-18.  Although plaintiff argues that it was not sufficient for the ALJ to merely recite evidence, I find that there is no basis to remand in this instance, because the evidence that the ALJ discussed clearly supports her finding.[7]  Notably, although plaintiff herself discusses a number of treatment notes from the record regarding her carpal tunnel syndrome, none of that evidence supports her argument that the ALJ erred in finding Dr. Kapoor's opinion to be inconsistent with the treatment records as a whole as to plaintiff's abilities to use either upper extremity.

---

[7]     This case is distinguishable from *Tasha W. v. Comm'r of Soc. Sec.*, 20-CV-0731, 2021 WL 2952867 (N.D.N.Y. July 14, 2021) (Dancks, M.J.), cited by plaintiff.  Not only did the ALJ not draw a connection between her summary of the evidence in that case and her conclusions as to the plaintiff's RFC, but was found to have potentially misrepresented the extent or nature of treatment for the plaintiff's vertigo and failed to provide adequate reasons for finding the opinion of a physician related to the effects of vertigo was not persuasive.  *Tasha W.*, 2021 WL 2952867, at *7-9.  Here, the ALJ provided an accurate discussion of the medical treatment evidence related to plaintiff's carpal tunnel syndrome which allows a reviewer to glean her rationale for not only finding Dr. Kapoor's opinion to be inconsistent with that evidence, but also for her ultimate findings regarding the manipulative limitations in the RFC.  Indeed, I do not see how requiring the ALJ to reiterate evidence she already discussed would serve any greater clarifying purpose when there is no medical treatment evidence in the record that appears to contradict her finding.

The medical record documents that plaintiff experienced significant symptoms in both her hands from her carpal tunnel syndrome, for which she underwent surgery on her right wrist in August of 2018 and on her left wrist in April of 2019.  AT 494-95, 510.  Plaintiff reported a few months after her right hand surgery that she had not seen improvement and now was experiencing shaking in that hand that caused her to drop items at work, and she was observed as having a light tremor in her right hand, although her subjective sensation was grossly intact.  AT 500-03.  In January of 2019, she was noted to be working three days per week subject to an employer's accommodation that she not be required to lift heavy objects at that job, and she had intact sensation and motor functioning, although motions of her hands caused pain.  AT 475-76.  She was referred to a rheumatologist to assess the mild bilateral osteoarthritis in her hands.  AT 564.

In April of 2019, plaintiff reported experiencing bilateral pain in her hands and requested medication to ease that pain; she was observed at that time as having swelling and pain in her joints to palpation.  AT 550-53. Also in April of 2019, it was noted that her right carpal tunnel surgery had produced good results, so her providers were going to perform it on her left hand.  AT 496-98.  A few weeks after the left hand procedure, plaintiff

reported she was doing well and did not have any issues, concerns, or pain.  AT 489.  In September of 2019, plaintiff advised that she had been experiencing a tremor in her right hand since her 2018 surgery that caused her to drop objects, and resulted in issues with her handwriting, and she was observed to have full strength bilaterally, but decreased sensation in her right hand and a tremor in her outstretched hand on the right more than the left.  AT 817-18.  Plaintiff's tremor improved on medication, but began to return in November 2019 when she had run out of it, such that she was observed to have a notable tremor in her hand on the right more than the left, although her strength and sensation were normal.  AT 819-20.  In March of 2020, plaintiff reported that her tremor was not as bad as it was previously but that "sometimes" her hand shakes; she was observed to have intact strength and sensation with a mild tremor, but reported that her main problem was related to headaches and specifically stated that her carpal tunnel syndrome was not bothering her.  AT 902-03.

As the foregoing reflects, records of plaintiff's treatment show that, following plaintiff's April 2019 left carpal tunnel surgery, the only reported symptom she experienced was a tremor, which was more pronounced in her right hand and which improved through use of medication beginning in August of 2019, such that by March of 2020, the only reported issue with

18

her hands was a mild right tremor.  In short, nothing in this record is contrary to the ALJ's finding that Dr. Kapoor's opinion that plaintiff could use her left hand and arm only occasionally and her right hand and arm less than occasionally is not persuasive.

I note, moreover, that even if the ALJ's assessment of the relevant factors under the regulations was nominally deficient in this case in that she provided little specific explanation regarding supportability and consistency of Dr. Kapoor's opinion, she also found that the opinion was not persuasive for the relevant time period because "it is prior to the alleged onset date." AT 19.  Plaintiff argues this is an inappropriate basis for discounting a medical opinion because evidence from before a claimant's amended onset date of disability is still relevant to functioning during the period in question. Dkt. No. 13, at 18-19.  While plaintiff is correct that medical opinions from prior to a claimant's filing date or alleged onset date can be relevant, she ignores the fact that Dr. Kapoor's opinion was not only rendered before the amended alleged onset date, but also explicitly states that it applies only to the period before that date.  Specifically, in response to the question, "[b]ased on history, your examinations, review of medical records or patient and objective, clinical and consistent subjective findings, what is the time period the answers herein represent?", Dr. Kapoor answered, "Jan[uary]

18, 2017 to Oct[ober] 8, 2018." AT 472.  Dr. Kapoor therefore indicated that his opinion applied as an indication of plaintiff's functioning only until October 8, 2018.  Significantly, plaintiff offers no argument as to why the ALJ should have ignored this statement from Dr. Kapoor and nonetheless found that his opinion applied to the relevant period, and offers no authority for the proposition that the ALJ can permissibly make such an extrapolation.  Because Dr. Kapoor made clear that it was his opinion that the limitations he indicated were a valid assessment of plaintiff's functioning only until October 8, 2018, nearly three months prior to the amended alleged onset date, there was no error in the ALJ's finding that this opinion was less persuasive as an assessment of plaintiff's functional abilities after the alleged onset date.  The fact that the ALJ found Dr. Kapoor's opinion to not be addressing a period relevant to her determination renders any error in more explicitly assessing the factors of supportability and consistency harmless.

Plaintiff also argues that the ALJ failed to reconcile her finding the opinion from Dr. Periakaruppan to be persuasive with her failure to adopt bilateral hand limitations into the RFC.  In his state agency finding, Dr. Periakaruppan opined that plaintiff was limited bilaterally in her ability to finger, but had no limitations in either hand in her abilities handle or feel.

AT 110.  I acknowledge that the ALJ indeed did not explain how she reconciled her finding as to this opinion with her RFC finding of limitations in only the right hand.  However, I find this error does not prevent meaningful review and is harmless under the circumstances.  Once again, I note that the ALJ included a lengthy discussion of the medical treatment evidence related to plaintiff's hands which included notations that plaintiff reported resolution of her left hand symptoms following her surgery, and that plaintiff reported a tremor primarily in her right hand.  AT 17.  Further, as was discussed above, my review of the record did not reveal any evidence that would undermine the ALJ's finding that plaintiff's left hand symptoms almost completely resolved as a result of her surgery for that hand, and that the remaining symptom of tremors was documented to be worse in her right hand.  Moreover, although Dr. Periakaruppan found that plaintiff had limitations in both hands regarding her ability to finger, he did not specify to what degree plaintiff was limited in either hand in functional terms, or even whether she experienced the same level of limitation in both hands.  AT 110-11.  The utility of Dr. Periakaruppan's opinion for determining plaintiff's specific functional abilities regarding fingering is therefore questionable.  I also note, although I acknowledge the ALJ did not, that Dr. Periakarrupan's opinion was rendered in July of 2018, before

plaintiff underwent release surgery in either of her hands, and therefore does not reflect the documented improvement in symptoms she experienced in 2019 and 2020.  And, while restricted in her lifting of heavy objects, there is no indication in plaintiff's testimony or treatment records reflecting that her hand and finger issues affected her ability to work as a waitress after the alleged onset date.  Based on all of these factors, the ALJ's failure to explain how she reconciled her reliance on this opinion with her RFC is merely harmless error, as a more detailed or thorough consideration of the issue would not have resulted in a different outcome here.

Although the ALJ did not rely on any single opinion specifically to find the manipulative limitations here, such a reliance is not necessary where the record contains sufficient evidence for an ALJ to make a reasoned determination of the RFC.  *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (noting that a medical source statement or opinion is not necessarily required if the record contains sufficient evidence from which an ALJ can assess the claimant's RFC).  Because the record does not contain any evidence that is suggestive of a need for greater manipulative limitations than the ALJ already accounted for, I find that the ALJ's RFC finding is supported by substantial evidence in this respect.

2.    Plaintiff's RFC Related to Her Ability to Walk and Stand

Plaintiff next argues that the ALJ erred in finding that she retains the ability to stand or walk for six hours per day and does not require the ability to change positions during the workday.  Dkt. No. 13, at 20-24.  In making this argument, plaintiff relies on perceived errors in the ALJ's assessment of the opinions from consultative examiner Dr. Jenouri, treating physician Dr. Kapoor, and treating NP Engler.

I note first that plaintiff's arguments that the ALJ should have relied on the opinion from Dr. Kapoor are rejected for the same reasons already discussed above, specifically the fact that the ALJ was correct to rely on Dr. Kapoor's own qualification that the limitations she opined were in effect only until October 8, 2018.  The ALJ was not required to accept Dr. Kapoor's opinion when Dr. Kapoor himself opined that those limitations do not apply to the relevant period.

As to Dr. Jenouri's opinion, he opined, as relevant to the argument, that plaintiff has moderate restrictions in her ability to walk and stand for long periods.  AT 461.  In his examination, Dr. Jenouri observed that plaintiff had an antalgic gait and could walk on her heels and toes with difficulty, and had some decreases in range of motion in her spine, hips, knees and ankles, as well as decreased sensation in her left leg in an L4

and L5 distribution and decreased strength in the same leg.  AT 459-60.

The ALJ found his opinion as to walking and standing to be less persuasive

because it was not consistent with the record evidence of "very few positive

clinical findings" and plaintiff's history of conservative treatment.  AT 19.

Plaintiff argues that the ALJ misrepresented the record by finding there

were few positive clinical findings, and erred in relying on her conservative

treatment.

In January 2019, it was noted that plaintiff had been on long-term

narcotic pain medications, and she was observed to have an antalgic gait

and did not like to bear weight on her left leg, had slight hip flexor

weakness, and had markedly restricted lumbar range of motion with

deconditioning.  AT 474.  The physician declined to take over management

of her pain medication, as he did not believe that chronic opiates were in

plaintiff's best interest.  *Id.*  In April of 2019, she presented with back pain

after falling when her leg gave out; she was observed to have tenderness

in her lumbar spine and 4/5 strength in her left leg.  AT 482-83.  Later in

April, plaintiff reported an acute flare of back pain that lasted for a few days.

AT 545-48, 718-19, 730.  It was noted at the emergency room that plaintiff

was currently being weaned off her narcotic pain medication, which was a

likely cause for the flare; she was observed to be distressed and frail-

appearing with limited back range of motion and decreased lower extremity strength. AT 545-48, 718-19. At a follow-up, she reported continued pain in her back and legs, left worse than right, and her physician observed that she had an antalgic gait, very slight L5 hypoesthesia, diffuse weakness in her lower extremities that was difficult to evaluate due to probably lack of effort, and diffuse tenderness. AT 473. It was noted that surgery had not been recommended by the hospital, and that plaintiff had elected to proceed with epidural steroid injections and gabapentin. AT 473.

In June of 2019, plaintiff reported left hip pain but her gait and extremities were noted to be normal. AT 542. The following month, she reported she was still having pain in her legs despite no longer working, and she was observed to have an antalgic gait, tenderness in her lumbar spine, and moderately reduced lumbar range of motion. AT 533-36. In August of 2019, plaintiff again was observed to have an antalgic gait with tenderness and mild pain in her lumbar spine and 4/5 lower extremity strength. AT 531. She continued to report pain and to display an antalgic gait in February of 2020, as well as pain and left leg hypoesthesia. AT 824, 879-81. It was noted at that time that she had a previous epidural injection in August of 2019 that had provided a seventy-five percent reduction in her pain for five months, so a repeat injection was recommended. AT 879,

882.

I note that, despite her characterization of the record as showing "few positive clinical findings," the ALJ did indeed acknowledge in her assessment of the evidence that plaintiff displayed antalgic gait, decreased range of motion, weakness, and loss of sensation on many examinations, which shows she clearly did not ignore that evidence.  AT 17-18.  She also acknowledged the imaging of plaintiff's lumbar spine that showed abnormalities primarily at the L4-L5 level.  AT 17.  It is therefore clear that, although inartfully expressed, the ALJ's statement that the record contained very few positive clinical findings was not a misinterpretation of the record, but either a commentary on the fact that plaintiff did not have frequent treatment for her back pain apart from treatment related to acute injury or exacerbation due to stopping pain medication, or a finding that the level of findings in the record were not consistent with any greater limitations in walking or standing represented in Dr. Jenouri's opinion.  Either interpretation is supported.

It was also not error for the ALJ to point to plaintiff's treatment history as evidence that Dr. Jenouri's opinion is not supported.  Notably, as was discussed above, the record shows that surgery was specifically not recommended for her lumbar spine impairment, that her worst flare of pain

26

occurred at a time when she had stopped taking narcotic pain medications, and that an epidural injection administered in August of 2019 provided seventy-five percent relief of her pain for five months such that she was recommended to undergo a second injection in early 2020.  Because it appears that plaintiff was not a surgical candidate and her pain could be fairly well controlled with injections such that she was able to work five or six hour shifts three days per week in early 2020, with no evidence that she required inordinate breaks to sit during her shift, the record of plaintiff's treatment modalities supports the ALJ's finding that plaintiff was not as limited as opined by Dr. Jenouri.

Lastly, plaintiff argues that the ALJ erred in finding the opinion from NP Engler to be unpersuasive because she failed to explain her findings related to consistency and supportability of that opinion.  Dkt. No. 13, at 23. In finding NP Engler's opinion unpersuasive, the ALJ noted that it is not entirely consistent with the evidence in the overall record,  and that particularly, her opinion regarding the ability to stand and walk is not consistent with plaintiff's ability to work as a waitress part time.  AT 19.  As to the ALJ's citation to plaintiff's ability to work during early 2020, plaintiff is correct that such evidence of part-time work does not necessarily mean that plaintiff can work full-time.  However, such a finding was not the ALJ's

purpose in highlighting her work ability.  Rather, the ALJ noted that

plaintiff's reports of an ability to work as a waitress three days per week for

five or six hours per day is inconsistent with NP Engler's opinion that

plaintiff cannot stand or walk for any amount of time in an eight-hour

workday.  AT 82-83, 481.  I find nothing improper in the ALJ's rationale

here, as plaintiff's testimony regarding that job directly contradicts NP

Engler's opinion in that respect.  Further, I also find the ALJ did not err in

finding that the medical evidence does not support a complete inability to

stand or walk in the workday, based on the summary of the evidence that

was discussed above, or even when considering the other opinion

evidence in the record.  Notably, although the ALJ did not specifically

discuss the factors of consistency and supportability, it is clear that NP

Engler's opinion is inconsistent with both her own treatment notes and the

other treatment evidence in the record, and therefore those factors were

implicitly encompassed by the ALJ's discussion of the evidence in

conjunction with her finding that NP Engler's opinion was inconsistent with

all of that evidence.  Again, while such explanations may not be sufficient in

all cases, it does suffice in this instance since the evidence clearly is at

odds with the extreme limitations indicated by the relevant opinion.  I further

note that the ALJ's finding that NP Engler's opinion was not consistent with

all of the evidence encompassed her whole opinion, not just her opinion regarding standing and walking, and I discern nothing in the record which would support the need to include a limitation regarding a need to shift positions.

I further note that the ALJ found the opinion from Dr. Periakaruppan to be persuasive, and that opinion supports an ability to walk and stand for six hours in an eight hour workday without a need to change positions. Although, as was discussed above, Dr. Periakaruppan's opinion in some respects appears to be at odds with more recent developments in the treatment record, such as regarding plaintiff's use of her hands, there does not appear to be a significant worsening in plaintiff's spinal condition from 2018 to 2020. In April and May of 2018 in particular, plaintiff was observed to have an antalgic gait, tenderness, and decreased range of motion with pain in her lumbar spine. AT 425, 430-31. Dr. Jenouri observed in June of 2018 that she had an antalgic gait, difficulty with heel and toe walking, decreased squat, limited range of motion, and decreased sensation and strength in her left leg. AT 459-60. These findings are extremely similar to the level of symptoms observed by physicians in 2019 and 2020, as was detailed previously. Because plaintiff has not shown that her spinal condition worsened after Dr. Periakaruppan rendered his opinion, that

opinion remains viable substantial evidence to support the ALJ's findings

contrary to the findings of the other physicians.  *See Barber v. Comm'r of*

*Soc. Sec.*, 15-CV-0338, 2016 WL 4411337, at *7 (N.D.N.Y. July 22, 2016)

(Carter, M.J.) (noting that "[i]t is well established that an ALJ may rely on

the medical opinions provided by State Agency consultants and that those

opinion[s] may constitute substantial evidence").

　　For all of the above reasons, I find no error in the ALJ's assessment

of plaintiff's ability to stand and walk, including her rejection of the alleged

requirement to shift positions.

### 3.　Plaintiff's RFC Related to Off-Task and Attendance

　　Plaintiff lastly argues that the ALJ erred in failing to include any

limitations in her abilities to stay on task or maintain attendance because

both Dr. Kapoor and NP Engler opined that plaintiff would be off-task or

absent beyond employer tolerance levels.  Dkt. No. 13, at 24-25.  Plaintiff's

argument fails for the same reasons discussed previously, as I find the ALJ

did not commit any error in assessing the opinions of either Dr. Kapoor or

NP Engler, and those reasons apply equally to the specific limitation now

highlighted by plaintiff.  I also reject plaintiff's argument that the medical

opinion evidence was "uncontradicted" regarding the need for off-task time

or absences, as neither Dr. Periakaruppan nor Dr. Jenouri indicated any

such limitations related to physical impairments in either of their opinions.

Even if the opinions regarding absences and time off-task could be considered uncontradicted, the ALJ nonetheless provided sufficient overwhelmingly compelling explanation for finding no need for such limitations through her discussion of the evidence and her findings that the two relevant opinions are not consistent with that evidence, which does not suggest a need for those limitation.  Notably, there is no indication in either the opinion forms of Dr. Kapoor or NP Engler or in their respective treatment notes that would appear to support a need for extensive off-task time or absences.  Because that finding was reasonably encompassed by the ALJ's discussion of both the treatment evidence and the opinions themselves, I find no error that would require remand.  Further, while plaintiff points generally to her reported pain and psychiatric impairments as the basis for her argument that these limitations should have been accepted, she ignores the fact that the record documents, as the ALJ acknowledged, that epidural injections appear to have provided significant, long-lasting relief of her pain, and her physicians recommended that she continue with those.  Moreover, the record reflects that plaintiff was able to work part-time in 2020, with no indication that she required absences or off-task time during her shifts due to pain.  Additionally, as to her mental

impairments, there is very little evidence to suggest ongoing limitations related to those impairments throughout the relevant period, much less limitations greater than those the ALJ already accounted for in the RFC.[8] There is no requirement that an ALJ accept any limitation merely because one or more physicians have opined that it exists; rather, the relevant question is what the evidence as a whole supports, and I find no error in the ALJ's finding that limitations opined by Dr. Kapoor and NP Engler for off-task time or absences are not supported by the evidence as a whole.

## IV.   SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I find that the determination resulted from the application of proper legal principles and is supported by substantial evidence.  Accordingly, it is hereby

ORDERED that defendant's motion for judgment on the pleadings (Dkt. No. 16) is GRANTED, plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is DENIED, the Commissioner's decision is AFFIRMED, and plaintiff's complaint is DISMISSED; and it is further respectfully

---

[8]    In her medical source statement, consultative examiner Dr. Sara Long opined that plaintiff "was able to maintain attention and concentration and appears generally able to maintain a regular schedule."  AT 455.

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      September 30, 2022
            Syracuse, NY

_____
DAVID E. PEEBLES
U.S. Magistrate Judge